**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk (pro hac vice pending)
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL WALSH, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BA SPORTS NUTRITION, LLC**<br><br>**Defendant** | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Michael Walsh ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against BA Sports Nutrition, LLC ("BA" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a California class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Bodyarmor Flash I.V. Zero Sugar beverages which claim to have Zero Sugar despite containing allulose ("Product" or "Beverage").[1]






**Nutrition Facts**

Serving size 1 Bottle

| Amount per serving | |
|---|---|
| **Calories** | **20** |
| Total Fat 0g | |
| Sodium 530mg | |
| Potassium 720mg | |
| Total Carbohydrate 3g | |
| Total Sugars 0g | |
| Includes Added Sugars 0g | |
| Protein 0g | |

| | |
|---|---|
| Calcium 80mg | Potassium 720mg |
| Vitamin C 9mg | Niacin 16mg |
| Vitamin B6 1.7mg | Vitamin B12 2.4mcg |
| Magnesium 65mg | Zinc 11mg |
| Chloride 880mg | |

---

[1] "Class Products" include: Lemon lime, Pineapple Passion and Watermelon Punch.

[2]

2. The Product's principal display panel unequivocally claims in bold font that it contains Zero Sugar. BA makes this claim to reassure consumers that its Products are devoid of sugar.

3. Contrary to the representation on the Products' labels – that it contains Zero Sugar – the ingredient deck reveals the inclusion of allulose -- a monosaccharide sugar.

> Filtered Water, Citric Acid, Allulose, Potassium Citrate (Electrolyte), Salt (Electrolyte), Potassium Chloride (Electrolyte), Sodium Citrate (Electrolyte), Sodium Lactate (Electrolyte), Calcium Carbonate (Electrolyte), Stevia Sweetener, Gum Arabic, Magnesium Oxide (Electrolyte), Natural Lemon Lime Flavor with other Natural Flavors, Ester Gum, Ascorbic Acid (Vitamin C), Niacinamide (Vitamin B3), Zinc Oxide (Electrolyte), Guar Gum, Pyridoxine Hydrochloride (Vitamin B6), Cyanocobalamin (Vitamin B12).[3]

4. Defendant knows that consumers are willing to pay more for products that contain zero sugar because they perceive them to be a healthier alternative to similar products that contain sugar. Indeed, Defendant advertises the Products with the clear intention that consumers rely on the representation made on the packaging that the Products contain "Zero Sugar."

---

[2] https://www.drinkbodyarmor.com/flash-iv-ready-to-drink/lemon-lime (Last visited September 10, 2026).

[3] https://www.drinkbodyarmor.com/flash-iv-ready-to-drink/lemon-lime. (Last visited September 10, 2026).

5. Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of "Zero Sugar."

6. By falsely labeling the Products as having "Zero Sugar," Defendant has profited from consumers' preference for offerings that are perceived to be healthier and otherwise devoid of sugar.

7. Throughout the applicable Class Period (defined below), Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to thousands of unsuspecting consumers throughout California.

8. Plaintiff alleges that Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § 17500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Plaintiff Walsh is a resident of Whittier, California. Defendant BA Sports Nutrition is headquartered in Whitestone, New York. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of

occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

11. Plaintiff Michael Walsh is a resident of Whittier, California.

12. Plaintiff Walsh purchased BA Sports' Bodyarmor Flash I.V. Zero Lemon-Lime several times over the past 6 months from Ralph's located at 11825 Whittier Blvd., Whittier, California.

13. Plaintiff Walsh made his purchases after reading and relying on Defendant's Product label.

14. Plaintiff Walsh believed the representations on the Product's label that, among other things, it contained "Zero Sugar."

15. Plaintiff Walsh believed that Defendant lawfully marketed and sold the Product.

16. Plaintiff Walsh relied on Defendant's labeling and was misled thereby.

17. Plaintiff Walsh would not have purchased the Product, or would have purchased the Product on different terms, had he known the truth.

18. Plaintiff Walsh was injured in fact and lost money as a result of Defendant's improper conduct.

19. Defendant BA Sports Nutrition, LLC is headquartered in Whitestone, New York. BA manufactures, markets, and sells the Bodyarmor Flash IV Zero Sugar beverage at issue in this action, which are sold at grocery, retail, and club stores throughout California and the United States.

# GENERAL ALLEGATIONS

## A. Consumer Demand for Zero Sugar Products

20. Consumer demand for products without sugar is well established. According to the International Food Information Council, nearly three out of four Americans (73% ) try to limit or avoid sugar.[4] Indeed, products devoid of, or low in sugar fall squarely in consumers' definition of healthy foods/beverages.

21. That is consistent with the USDA 2025–2030 Dietary Guidelines for Americans which states that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[5] Similarly, the World Health Organization recommends "limiting free sugars to less than 10 percent of total daily energy intake…. [and] limiting them further to 5 percent or less may provide additional health benefits." [6] The same is echoed by the U.S. Centers For Disease Control and Prevention, which advises, "[t]o live healthier, longer lives, most Americans need to move more and eat better. This includes consuming fewer added sugars. Consuming too much added sugar can contribute to health problems such as weight gain and obesity, type 2 diabetes, and heart disease." [7] The CDC concludes, "[n]o amount of

---

[4] International Food Information Council. 2022 Food and Health Survey. Available at https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf (last visited September 10, 2026).

[5] USDA, Dietary Guidelines For American. Available at https://cdn.realfood.gov/DGA.pdf (last visited September 10, 2026).

[6] World Health Organization, *Healthy Diet,* January 2026. Available at https://www.who.int/news-room/fact-sheets/detail/healthy-diet.

[7] CDC Nutrition: *Get the Facts: Added Sugars,* Available at https://www.cdc.gov/nutrition/php/data-research/added-sugars.html. (last visited September 10, 2026).

added sugars or non-nutritive sweeteners is recommended or considered part of a healthy or nutritious diet." *Id.*

22. Defendant has capitalized on this demand by selling a Product it claims to contain Zero Sugar. Unfortunately, this representation is false and misleading as the Product contains allulose -- a monosaccharide sugar.

**B. Defendant's Zero Sugar Representations**

23. Defendant prominently represents on the Product's principal display panel that it contains "Zero Sugar."

24. The Zero Sugar representation communicates to reasonable consumers that the Product contains no sugar. That is the plain and ordinary meaning of "Zero Sugar." The claim is demonstrably false as Defendant's ingredient list identifies allulose—a sugar—as an ingredient in the Product.

25. The Product's Nutrition Facts panel reinforces, rather than cures, the materially misleading impression created by the Zero Sugar representations. The Nutrition Facts panel declares 0 grams of Total Sugars and 0 grams of Added Sugars. The ingredient list identifies "Allulose," but does not state that allulose is a free monosaccharide or sugar.

> Filtered Water, Citric Acid, Allulose, Potassium Citrate (Electrolyte), Salt (Electrolyte), Potassium Chloride (Electrolyte), Sodium Citrate (Electrolyte), Sodium Lactate (Electrolyte), Calcium Carbonate (Electrolyte), Stevia Sweetener, Gum Arabic, Magnesium Oxide (Electrolyte), Natural Lemon Lime Flavor with other Natural Flavors, Ester Gum, Ascorbic Acid (Vitamin C), Niacinamide (Vitamin B3), Zinc Oxide (Electrolyte), Guar Gum, Pyridoxine Hydrochloride (Vitamin B6), Cyanocobalamin (Vitamin B12).[8]

[8] https://www.drinkbodyarmor.com/flash-iv-ready-to-drink/lemon-lime (last visited September 10, 2026)

### C. Allulose Is a Sugar

26. "D-allulose [is] a C-3 epimer of D-fructose, [] a rare monosaccharide used as a food ingredient or a sweetener."[9] It is a type of sugar that is low in calories while maintaining the majority of sweetness relative to basic sugars.[10]

27. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, as a monosaccharide, "must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[11] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

28. Allulose is identified as the third ingredient on the Product label, listed after Filtered Water and Citric Acid. It is followed by 17 other ingredients. Under FDA regulations, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a). Allulose's position as one of the first ingredients by weight indicates that it is present in the Product in significant quantity. By comparison, Ascorbic Acid [Vitamin C], which is the 16th listed ingredient by weight, is reported at 9 mg.

---

[9] Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods 448 (2019). Available at https://doi.org/10.3390/foods8100448 (last visited September 10, 2026)

[10] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults, 10 Nutrients art. 2010 (2018), https://doi.org/10.3390/nu10122010 (last visited September 10, 2026).

[11] Federal Register, *Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, May 27, 2016. Available at https://www.federalregister.gov/documents/2016/05/27/2016-11867/food-labeling-revision-of-the-nutrition-and-supplement-facts-labels (Last visited September 10, 2026).

**D. The Product Violates FDA Nutrient Content Regulations**

29. The Federal Food, Drug & Cosmetic Act ("FDCA") is a comprehensive federal consumer protection statute that broadly regulates the sale of food to the consuming public. 21 U.S.C §301. The FDCA prohibits the misbranding of any food. 21 U.S.C. §331(b).[12] Generally, a food is "misbranded" if, among other things, its labeling is false or misleading. 21 U.S.C. § 343.[13]

30. In addition to this broad prohibition, the FDCA governs specific labeling claims. 21 C.F.R. § 101.13 governs the use of nutrient content claims. The challenged Zero Sugar representation, which appears on the Product's principal display panel, is an express nutrient-content claim pertaining to the absence of sugar. 21 C.F.R.§ 101.13(b)(1).

31. 21 C.F.R. §101.60 provides that a claim about a food's sugar content may be made only if the claim uses a term defined in that section and the food meets the conditions specified for that term. The claim must also comply with 21 C.F.R. § 101.13's general requirements, which include accuracy and non-deceptiveness. 21 C.F.R. § 101.60(a)(1)–(3). "Zero sugar" is among the absence-of-sugar terms specifically defined by 21 C.F.R. § 101.60(c)(1).

32. Section 101.60(c)(1) provides that a food may not be labeled "zero sugar" unless each of the following conditions is satisfied: (i) The food contains less than 0.5 gram of sugars, as defined in 21 C.F.R. § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving; (ii) The food contains no ingredient that is a sugar or that consumers generally understand to contain sugars, unless that ingredient is followed in the ingredient statement by an asterisk referring

[12] The term food broadly means "articles used for food or drink for man…" 21 U.S.C §321(f).

[13] California's Sherman Food, Drug, and Cosmetic Law adopted the FDCA verbatim. *See, e.g.*, California Health & Safety Code, Article 6, Section 110660 stating that "[a]ny food is misbranded if its labeling is false or misleading in any particular."

to a statement that it “adds a trivial amount of sugar,” “adds a negligible amount of sugar,” or “adds a dietarily insignificant amount of sugar”; and (iii) The food satisfies the regulation’s calorie-claim condition or the term is immediately accompanied, each time it is used, by the statement “not a reduced calorie food,” “not a low calorie food,” or “not for weight control.” 21 C.F.R. § 101.60(c)(1)(i)–(iii).

33. These requirements are conjunctive so failure to meet any one subsection violates the provision.

34. The Product fails to satisfy subsection (i). 21 C.F.R. §101.9(c)(6)(ii) defines Total Sugars as “the sum of all free mono- and disaccharides.” Allulose is a free monosaccharide and falls squarely within that definition. The Product contains allulose in a quantity that, when properly accounted for, exceeds 0.5 grams per reference amount customarily consumed and per labeled serving, as evidenced by allulose’s prominent position among the first ingredients by weight on the Product’s label.

35. FDA’s nonbinding allulose guidance does not alter this failure. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition Facts labels. The guidance did not amend 21 C.F.R. § 101.9(c)(6)(ii), does not address 21 C.F.R. § 101.60(c)(1), and does not authorize an outside-panel “Zero Sugar” claim. The panel figure therefore does not reflect the Product’s actual sugar content and does not establish compliance with 21 C.F.R. § 101.60(c)(1)(i).

36. The Product also fails to satisfy subsection (ii). The Product’s label lists “Allulose” in the ingredient statement without an asterisk referring to any statement that it adds a trivial, negligible, or dietarily insignificant amount of sugar.

37. Because the Product bears false, misleading, and impermissible outside-panel nutrient-content claims, it is misbranded under federal law.

38. **Sherman Law Adoption**. While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendant’s

labeling, significantly, Plaintiff does not seek to prosecute or enforce any aspect of the FDCA. Each of the foregoing FDCA violations independently violates California's Sherman Food, Drug, and Cosmetic Law, which incorporates the Food Drug and Cosmetic Act in its entirety by reference. Cal. Health & Safety Code § 110100. Each Sherman Law violation is, in turn, a predicate violation actionable under the "unlawful" prong of the UCL, as alleged in the Fourth Cause of Action below.

**E. Reasonable Consumers Cannot Detect Defendant's Deception**

39. Reasonable consumers have no reason to search the side or back panels when presented with the conspicuous front-panel representation that the Product contains "Zero Sugar." But even if they did, the Nutrition Facts panel declares 0 grams of Total Sugars and 0 grams of Added Sugars. The ingredient list identifies "Allulose" but does not state that allulose is a free monosaccharide or sugar.

40. Consumers are also not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of chemistry. Defendant is responsible for ensuring that its express labeling claims are truthful and not misleading.

**F. Defendant Knew the Zero Sugar Representations Were False**

41. Defendant knew, or should have known, that the Zero Sugar Representations were false or misleading when it labeled, distributed, and sold the Product. Specifically, Defendant knew that: (a) the Product contains allulose; (b) allulose is a free monosaccharide and sugar; (c) the label nevertheless represents that the Product contains "Zero Sugar;" (d) the ingredient list identifies Allulose without the asterisk and qualifying statement required by 21 C.F.R. § 101.60(c)(1)(ii); (e) reasonable consumers would rely on the Zero Sugar Representations when

purchasing; (f) consumers would not receive the represented benefit of the bargain; and (g) the Zero Sugar Representations enabled Defendant to charge a premium for the Product.

42. Defendant's own label identifies "Allulose" as an ingredient. Defendant thus knows the identity of the allulose in the Product, yet prints "Zero Sugar" on the Product's principal display panel. That treatment demonstrates that Defendant understood the Product's composition and elected to represent it as free of sugar.

**G. Defendant's Zero Sugar Representations Damaged Plaintiff and the Class**

43. Defendant concealed or failed to disclose material facts about the Product, including: (a) that allulose is a free monosaccharide; (b) that the Product contains allulose, a sugar; (c) that the Product does not comply with pertinent FDA / Sherman Law regulations; (d) that the Product does not conform to the Zero Sugar Representations; and (e) that the Product is misbranded under federal and California law as a result of the Zero Sugar Representations.

44. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant damaged Plaintiff and members of the Class in that they: (a) paid money for a product that was not as represented; (b) paid a premium for the Product; (c) were deprived of the benefit of their bargain; and (d) would not have purchased the Product or would have paid less had they known the Zero Sugar Representations were false.

45. By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

46. As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

**NO ADEQUATE REMEDY AT LAW**

47. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

48. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

49. Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.,* the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

50. Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

51. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements

that the Product's challenged representations are not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

52. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

53. Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## ECONOMIC INJURY

54. Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

55. Plaintiff saw and relied on Defendant's misleading labeling of its Products.

56. Plaintiff believed that the purchased Products contained Zero Sugar.

57. Plaintiff believed that the Products were lawfully marketed and sold.

58. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid a price premium.

59. As a result of their reliance on Defendant's misrepresentations, Plaintiff received Products that contained ingredients which he reasonably believed the Products did not contain.

60. Plaintiff received Products that were unlawfully marketed and sold.

61. Plaintiff lost money and thereby suffered injury as he would not have purchased these Products and/or paid as much for them absent the misrepresentation.

62. Defendant knows that the claim "Zero Sugar" is material to a consumer's purchasing decision.

63. Plaintiff altered his position to his detriment and suffered damages in an amount equal to the amounts he paid for the Products he purchased, and/or in additional amounts attributable to the deception.

64. By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

65. Plaintiff, however, would be willing to purchase products labeled as "Zero Sugar" again in the future, including Defendant's Product, should he be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

66. However, Plaintiff will not be able to purchase Defendant's Products in the future, even though Plaintiff would like to, since simply viewing the ingredient list on Defendant's Products that displays the wording "Zero Sugar" on the label may not be enough to prevent Plaintiff from being deceived by Defendant's Products, since it will not afford Plaintiff the opportunity to quickly and easily view the ingredient list before purchasing the Products to determine whether any of the ingredients in the Product is a sugar, especially because Plaintiff, as a reasonable consumer, does not have the scientific or encyclopedic knowledge to view all the ingredients identified on the ingredient list to determine whether a particular ingredient is a sugar. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry sufficient to identify allulose as a free monosaccharide

and sugar. Moreover, Plaintiff does not have access to Defendant's ingredient formulations to determine the quantity of allulose or other sugars present in the Product.

## CLASS ACTION ALLEGATIONS

67. Plaintiff brings this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Class Products in California during the Class Period. [14]

b. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

68. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

69. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

70. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

71. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

---

[14] The statute of limitations for Plaintiff' claims under California Civil Code § 1750, *et seq*. and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years from the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins 4 years from the date of the initial filing to the present.

72. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;
b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;
c. Whether Defendant participated in and pursued the common course of conduct complained of herein;
d. Whether Defendant has been unjustly enriched as a result of their unlawful business practices;
e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");
f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");
g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");
h. Whether Defendant's actions constitute breach of express warranty;
i. Whether Defendant should be enjoined from continuing the above-described practices;
j. Whether Plaintiff and members of the Class are entitled to declaratory relief; and
k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

73. Plaintiff's claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendant's Product. Plaintiff is no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

74. Plaintiff is an adequate representative of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and their counsel will adequately protect the interests of the Class.

75. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

76. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

77. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of Breach of Express Warranty

78. Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

79. Plaintiff's express warranty claims are based on violations of Cal. Com. Code §2313.

80. Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased contained Zero Sugar.

81. The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

82. Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

83. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

84. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

85. Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq*.**
**(On behalf of the California Class)**

86. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

87. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

88. A business act or practice is "unlawful" if it violates any established state or federal law.

89. Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;
b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;
c. 21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

90. California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

91. Each of Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), including, but not limited to, the following sections:

92. Section 110100 (adopting all FDA regulations as state regulations);

93. Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account");

94. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . . An advertisement is false if it is false or misleading in any particular");

95. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised");

96. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded");

97. Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

98. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

99. Because the Product bears "Zero Sugar" nutrient-content claims despite containing allulose, a monosaccharide sugar, the Product is misbranded and falsely

advertised under California law, and Defendant's labeling, distribution, and sale of the Product are unlawful.

100. Each of the challenged omissions, statements, and actions by Defendant violate the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

101. Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

102. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

103. Through their unlawful acts and practices, Defendant has obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

104. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, he seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign. California Business & Professions Code section 17203.

## THIRD CAUSE OF ACTION

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

105. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

106. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

107. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

108. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through their misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq*.

109. Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on their Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

110. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, he seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign. California Business & Professions Code section 17203.

## FOURTH CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

111. Plaintiff incorporate each and every allegation contained in the paragraphs above as if restated herein.

112. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

113. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

114. Defendant's acts and practices of mislabeling its Products as containing "Zero Sugar" when, in fact, they contain allulose, a monosaccharide sugar, constitute a fraudulent business practice likely to deceive members of the consuming public.

115. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

116. Through its fraudulent acts and practices, Defendant has improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in

the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

117. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## FIFTH CAUSE OF ACTION

### False Advertising
### Violation of California Business & Professions Code §§ l7500, *et seq*.

118. Plaintiff incorporate each and every allegation contained in the paragraphs above as if restated herein.

119. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

120. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

121. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

122. Through their deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff request that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, et seq., as discussed above.

Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

123. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

124. As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched, and pray for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act California Civil Code §§ 1750, *et seq*.

125. Plaintiff incorporate each and every allegation contained in the paragraphs above as if restated herein.

126. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

127. Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

128. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

129. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

130. Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

131. The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels, which formed a material basis for their decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

132. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

133. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

134. In conjunction with this Complaint, Plaintiff will serve a CLRA demand pursuant to Civil Code §1782, notifying Defendant of the conduct described herein and that such conduct is in violation of particular provisions of Civil Code §1770. If Defendant fails to take corrective action within thirty days, Plaintiff will amend the Complaint to seek the full measure of damages available under Civil Code §1780(a).

135. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts, and practices alleged above pursuant to California Civil Code §1780(a)(2).

## **SEVENTH CAUSE OF ACTION**

### **Restitution Based On Quasi-Contract/Unjust Enrichment**

136. Plaintiff incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

137. Plaintiff pleads this cause of action in the alternative.

138. Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

139. Defendant took monies from Plaintiff and the Class for these Products and has been unjustly enriched at the expense of Plaintiff and the Class as a result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

140. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Products or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiff their costs of suit, including reasonable attorneys' fees and pre and post-judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: September 11, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*